Ana Maria Ravines de Schur
3848 S. West Temple, P.O. Box 50
Salt Lake City, Utah 84115

Received
2022 FEB 7 AM 8:40
CLERK
U.S. DISTRICT COURT

Ana Maria Ravines de Schur

Plaintiff

VS

Judge Chelsea Koch, Third District Court of Utah,
Jonathan Waldram, Public Defender,
Salt Lake Legal Defenders
(Phone 801.532.5444)

Defendants,

Federal Complaint

CIVIL CASE Number:

Judge:

Case: 2:22-cv-00067
Assigned To : Pead, Dustin B.
Assign. Date : 2/7/2022
Description: Ravines de Schur v. Koch et al

# In the United States District Court
# For the District of Utah

This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, 15 U.S.C. § 1691e(h). Venue is proper in this district under 28 U.S.C. § 1391(b) because the actions and omissions giving rise to the allegations occurred in the State of Utah, and the defendants Nathan Schur and Ana Maria Ravines de Schur are citizens of Germany and the total restitution demanded is larger than $75,000.00.

Plaintiff Ana Maria Ravines de Schur was contacted on Nathan Schur's cell phone by Attorney Jonathan Waldtram, who represented Plaintiff's son Nathan Schur in civil case Nr. 22 19 00 411

at the Third District Court. The attorney spoke with Ana Maria Ravines de Schur in preparation for her appearance as a witness in the court trial that would take place on January 18, 2022 and January 20, 2022 at an online hearing with Judge Chelsea Koch and the Public Defender Jonathan Waldram.

During the trial, Nathan Schur requested to have the Public Defender removed, as he wanted to declare on his own account.

The judge counseled Nathan Schur telling him to not relinquish the services of the Public Defender, because she had been working for a long time with the attorney and recommended his representation.

Both the Public Defender and the Judge forbade Plaintiff Ana Maria Ravines de Schur to declare in that hearing. Plaintiff could not speak out, in spite of having been called by the Public Defender to appear in the hearing as a witness. Plaintiff heard the Judge asking the public Defender, "Are you sure that you don't want to put Nathan's Mother in the case as a witness?" And the Public Defender responded "No.". Plaintiff is concerned that she was discriminated by the bias existing in the state of Utah against the color of Ana Maria Ravines de Schur's skin. The Plaintiff is a minority denied equal access to the process of confirming Justice for all.

Both the Judge and the PUblic Defender did not pay any attention to the Accused information and exhibits. Only the other side was taken under consideration. The other side is a white Utah woman who sells herself online advertising her "pussy."

The Judge broke her Code of Ethics as she said that she had worked with the attorney and she recommended him to stay in the case, to then sentence an innocent refugee to jail without exerting judiciary balance in support of her decision.

Plaintiff believes that the Judge did not have any business at "recommending" the Public Defender, if the accused was requesting to speak on his own.

The Judge's decision did not consider or include the Accused factual need to be reviewed by a psychological assessment before deciding that the accused would be a danger for the community and should go to jail to protect the alleged victims, without checking upon international agreements for the protection of the physical and mental health of those present

in the State of Utah as Refugees.  The judge did not either demand a mental health assessment of the accusing party.

Neither the Judge nor the Public Defender paid attention to numerous written statements that had been previously notarized by witnesses who declare under oath that the accused is not a violent person, but his oppressors are.

Departing from the Plaintiff's judiciary treatment of her son in the State of Utah the Judge did not take under consideration the existence of the structural racism that exists in the State of Utah as a consequence of historical developments that categorize the culture in Utah as a form of Criminal Apartheid for the mass indoctrination that has been exerted in most of these honorable White People against people of color.  The family of Nathan Schur knows quite well and have described to this Honorable Court how people of color and refugees in the State of Utah are racially profiled, accused without any consideration and thrown into jail or even killed for being dark skinned.

Refugees of color run from the State of Utah without reporting what they go through. Plaintiff visited the State of Pennsylvania in 2019 in response to an invitation to a double PhD that was disrupted by the appearance of the CoVid19 pandemic. In Pennsylvania, the Plaintiff found numerous refugees of color whose first port of entry had been Salt Lake City, Utah.  The refugees reported that they left the state because of the structural racism they suffered under. This information can be verified if this Court will follow the reports left by some of those refugees in their run from the Mystical White Supremacist culture that dominates the public sectors in the State of Utah.   The history of the State of Utah, with its institutionalized racism against people of color, leaves refugees under the perception that they are not going to obtain equal access to justice.  And in situations such as this one, their most horrible fears are often confirmed.

The decision of Judge Chelsea Koch at the Third District Court trial was not supported by international agreements for the protection of refugees in the United States. A reliable psychiatric or psychological assessment that the Witness Ana Maria Ravines de Schur would have requested for her son to be evaluated before throwing an innocent refugee in jail was not ordered by Judge Koch. She did not let the Plaintiff even explain this part when the Plaintiff requested to say a word.  Judge Koch, the Trial Attorney and the Public Defender asked the Plaintiff to remain silent. That is a violation of the Plaintiff and her family's rights as refugees in

the United States to access Justice unbiased from their appearance, heritage or from the existing prejudices against people of color that dominate the state of Utah by dint of the Mormons' history of racism against those who are different.

Refugees in the State of Utah certainly have rights that should be respected. Plaintiff saw the Public Defender standing silent without even looking at the written evidence that had been minutely prepared for that trial. The condition of immigrants and refugees in the State of Utah remains endangered by the existence of these biases that impede people of color access equal rights to the distribution of Justice.

Plaintiff is in possession of numerous reports that she kept filing with the State of Utah Police Departments, expressing the situation that she saw her son into.

When the Plaintiff's son finally started to tell his family (Plaintiff and his brothers) what was going on all along with the accuser Lori Berntsen, the Plaintiff started to look for support with national and international agencies that registered her reports, including State of Utah Police Departments. .

Legal authorities in the State of Utah appear to be very discrete when the perpetrators of sex and labor crimes are church-going white people in the area. This is part of the complicated history of this state, as the culture carries a heavy history of sex addiction and sexual rituals even practiced inside their temples.

The situation of Plaintiff's son is quite dangerous. He suffers from an emotional disability that sends him through headaches and deep anxiety when facing dangerous situations. At no time of his experience has he been dangerous to himself or to others.  His COMPLEX PTSD finds him often under horrendous headaches and inability to find rest.  He has been insulted permanently by two women who trafficked him, one sexually one laborally.  The trafficking lasted for so long as his family wasn't aware of his private relations to those women.  Trafficker Lori Berntsen used to call him NEGRO and threatened him with deportation for years

Case 2:22-cv-00067-DBB   Document 2   Filed 02/07/22   PageID.11   Page 5 of 9
**Complaint against MISTRIAL by Third District Court Judge Chelsea Koch
and  Public Defender Jonathan  Waldram**

The following is a list of the problems that have been analyzed by the Plaintiff with the support of a Trafficking agency that helps the family:  The Plaintiff demands this court to make an urgent decision of these immediate concerns for Nathan to find healing.

Unfortunately, these measures were not protected by the Judge or by the Public Defender in the family's case.  In a landmark exhibit of the lack of equal justice for ethnic minorities in the State of Utah, where a person of color is sentenced before making a clear case, these considerations have been kept fully out of the case:

Finding safe housing for the Plaintiff's son.
Getting a protective order against Lori Berntsen.
Advocating for Nathan after he has been a witness in a criminal case involving drug parties thrown by his labor trafficker.
Being able to stay and work legally in the United States under his green card without fear and without threats to his personal safety.
Developing better job skills training and employment
Developing life skills and personal planning

Reuniting with his family without fearing of retaliation, and recovering his belongings that are locked out in the house of the labor trafficker.
Clearing up the criminal record damaged by the State of Utah Unified Police Department against Nathan Schur, so that he can more easily return to his previous blue-collar jobs.
Obtaining copies of Nathan's identification papers such as his birth certificate from Germany, his passport, his social security card. All these documents have been retained by the Labor Trafficker, who sent Nathan Schur to work doing home repairs across state boarders . The trafficker used the money to pay for her own home tax debts.
Obtaining medical care — It must be figured out if after obtaining back his German documents, Nathan may go back to the European Union for medical and emotional care in his recovery as a human trafficking survivor, or if he would find these services under supervision of the Federal Authorities, to make sure that he won't be abused through a Mistrial again as it has occurred.
Nathan Schur needs to find mental health care from people who understand what he has been through. Specialized mental health for survivors of this kind is not something easy to

find in the State of Utah, because most of the therapists in the State of Utah are Mormons and as graduates of Brigham Young University they are impeded to touch certain areas of trauma when the situation implies violations committed under omissions because the perpetrators are registered Mormons in the State of Utah.

Federal considerations may be able to find the right private mental health support for Nathan Schur, if he feels the need to report the crimes against him to the police, without having to face police harassment as it has already been discussed with this court on parallel complaints raised by the Plaintiff.

Plaintiff found out that Nathan went to the police to report the harassment of Ms. Bentsen several times in the past, but his complaints were not taken seriously. The Police Department in Utah is not very well trained to help victims of trafficking, since there are no efficient organizations working in Utah with these types of problems.

Because there is no possible option for this family to find legal protection by a lawyer who may be skilled at working with survivors of trafficking, and immigrants escaping persecution from their country of origin, Plaintiff demands her family's right under Diversity of Citizenship and under damages that will exceed the sum of 75K Dollars for Trauma Therapy in the upcoming several years.

Nathan Schur carries deep scars from the proven persecution in Europe that we left behind in Berlin. People of color are killed a lot in Germany. The authorities remain silent. We came to the United States to find a safe haven. But, we did not know that the sexual problems are so intense in the State of Utah.

There are NO agencies in Salt Lake City able to protect and support Nathan Schur as a survivor of trafficking in this situation. Although the State of Utah counts with numerous grassroots organizations helping gender-related problems and people escaping polygamy, there is not much to provide assistance to survivors of human and labor trafficking.

Because Nathan is a German Citizen, he would have been able to run back to the European Union to find therapy through legal venues, while the situation here stabilizes for him. But,

Case 2:22-cv-00067-DBB   Document 2   Filed 02/07/22   PageID.13   Page 7 of 9
**Complaint against MISTRIAL by Third District Court Judge Chelsea Koch
and  Public Defender Jonathan  Waldram**

Jennifer Johnson has stolen even his birth certificate.  Plaintiff believes that Nathan would benefit if he could renew contact to his father, who is in a very critical situation in Berlin Germany.  But, this option has been made unavailable through the loss of his European Union documents by the confiscation of all his belongings by his labor trafficker.

**Legal Protections For Refugees in the United States:**

International and regional instruments relating to refugees include:

- 1951 Convention relating to the Status of Refugees
- 1967 Optional Protocol relating to the Status of Refugees
- Universal Declaration of Human Rights (art. 14)
- American Declaration on the Rights and Duties of Man (art. 27)
- American Convention on Human Rights (art. 22)
- Cartagena Declaration on Refugees, Colloquium on the International Protection of Refugees in Central America, Mexico and Panama (Cartagena Declaration)
- African [Banjul] Charter on Human and Peoples' Rights (art. 12)
- OAU Convention Governing the Specific Aspects of the Refugee Problem in Africa
- Arab Charter on Human Rights (art. 28)
- Cairo Declaration on Human Rights in Islam (art. 12)
- European Convention on Human Rights (arts. 2, 3, and 5)
- Council Regulation EC No 343/2003 of 18 February 2003 establishing the criteria and mechanisms for determining the Member State responsible for examining an asylum application lodged in one of the Member States by a third country national
- Council Directive 2004/83/EC of 29 April 2004 on minimum standards for the qualification and status of third country nationals or stateless persons as refugees or as persons who otherwise need international protection and the content of the protection granted
- Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (art. 3)
- African Union Convention for the Protection and Assistance of Internally Displaced Persons in Africa
- Convention on the Rights of the Child (art. 22)
- European Union New Pact On Immigration and Asylum

**Who Is a Refugee?**

Article 1(A)(2) of the 1951 Convention defines a refugee as an individual who is **outside his or her country of nationality or habitual residence** who is **unable or unwilling to return** due to a **well-founded fear of persecution** based on his or her **race, religion, nationality, political**

Case 2:22-cv-00067-DBB   Document 2   Filed 02/07/22   PageID.14   Page 8 of 9
**Complaint against MISTRIAL by Third District Court Judge Chelsea Koch
and Public Defender Jonathan Waldram**

**opinion, or membership in a particular social group**. Applying this definition, internally displaced persons (IDPs) – including individuals fleeing natural disasters and generalized violence, stateless individuals not outside their country of habitual residence or not facing persecution, and individuals who have crossed an international border fleeing generalized violence are not considered refugees under either the 1951 Convention or the 1967 Optional Protocol.

Countries in the Americas and Africa experiencing large-scale displacement as the result of armed conflicts found that the 1951 Convention definition did not go far enough in addressing the protection needs of their populations. Consequently, both Article 3 of the Cartagena Declaration and Article 1(2) of the 1969 OAU Convention extend refugee status to an individual who "owing to external aggression, occupation, foreign domination or events seriously disturbing public order in either part or the whole of his country of origin or nationality, is compelled to leave his place of habitual residence in order to seek refuge in another place outside his country of origin or nationality." OAU Convention Governing the Specific Aspects of the Refugee Problem in Africa, art. 1(2); *accord* Cartagena Declaration on Refugees, Colloquium on the International Protection of Refugees in Central America, Mexico & Panama, art. 3. The African Union is unique in having a convention that specifically addresses the protection needs of IDPs. African Union Convention for the Protection and Assistance of Internally Displaced Persons in Africa. Finally, the United Nations High Commissioner for Refugees (UNHCR) provides protection to IDPs and stateless individuals in addition to 1951 Convention refugees.

For all the reasons explained above, Plaintiff demands that the Decision of Judge Chelsea Koch, who was appointed to the Third District Court in September 2019 by Governor Gary R. Herbert, be deemed a MISTRIAL and family Schur / Ravines de Schur may be supported to find true safety in their protected Status as legal refugees from Germany to the United States.

## DEMANDS FOR REPARATIONS:

PLAINTIFF Ana Maria Ravines de Schur has COMPLEX PTSD from the trauma caused by having to witness the stress and duress put on her refugee son over the past several years. Ana Maria Ravines de Schur has had to witness video footage of Nathan being assaulted by Lori Berntsen and Lori Berntsen asking Nathan for sexual acts to be performed for her as a "slave" of her "puzzy."

**Complaint against MISTRIAL by Third District Court Judge Chelsea Koch and Public Defender Jonathan Waldram**

Ana Maria Ravines de Schur, being impoverished and on Medicaid, is needing professional "trauma therapy and care that Medicaid does not provide. The portion allotted to Ana Maria totaling $144,000.00 to cover the next 10 years for the therapy needed for Ana Maria Ravines de Schur at the standard rate of one weekly visit of $150 per week.

Nathan Schur also suffers from PTSD due to fears of being deported away from his family over Lori Berntsen's threats and intimidation. Nathan requires therapy to deal with the issues that Lori Berntsen has created for Nathan mentally and the traumatizing lack of judiciary support as a refugee experienced by the administration of Justice in the Third District Court. He is asking for $144,000.00 for the next 10 years.

Multiple violations have affected the Plaintiff and her son Nathan Schur's integration as refugees to the United States through violations instigated by State of Utah contractors to the Federal Government who simply do not care about the existing ethnic minorities in the State of Utah. These violations were caused by acts of demonstrable xenophobia, nepotism, corruption, malfeasance and most recently through acts of persecution incited by Lori Berntsen under the indifference of Judges and Public Defenders who have been indoctrinated to disregard those who are different.

*[signature]*

Ana Maria Ravines de Schur / Signed, February 4, 2022